FILED

AUG 20 2018

Clerk, U S District Court
District Of Montana
Helena

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

HELENA DIVISION

| | |
|---|---|
| PACIFIC NORTHWEST SOLAR, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>NORTHWESTERN CORPORATION, A DELAWARE CORPORATION DBA NORTHWESTERN ENERGY,<br><br>Defendant. | No. CV-16-114-H-SEH<br><br>ORDER |

This case arises from a contract dispute between Plaintiff Pacific Northwest Solar, LLC ("PNW") and Defendant Northwestern Corporation ("NWE"). NWE has moved to dismiss for failure to join the Montana Public Service Commission ("PSC") as an indispensable party.[1] For the following reasons, the motion is denied.

---

[1] Doc. 52.

## Facts and Procedural History[2]

The Federal Power Act ("FPA")[3] provides "any person who owns or operates facilities used to transmit or sell electric energy in interstate commerce at wholesale is subject to the jurisdiction and regulator power of the [Federal Energy Regulatory Commission ("FERC")]."[4] The FPA was amended in 1978 with the Public Utility Regulation Policies Act ("PURPA"), in part to "encourage the development of cogeneration and small power production facilities," and thereby diminish the United States' reliance on fossil fuels.[5]

PURPA "creates a market for [a QF's] energy by requiring that [a state's] Commission establish regulations that obligate public utilities to sell electric energy to and purchase electric energy from QFs."[6] A facility that produces both "electric energy" and "steam or forms of useful energy (such as heat) which are used for industrial, commercial, heating or cooling purposes" qualifies as a

---

[2] The documents and factual matters referenced were either stipulated by the parties, attached to joint motions as materials intended for reference, or were relied upon without objection by both parties.

[3] *See* 16 U.S.C. §§ 791-823d (2018).

[4] *Indep. Energy Producers Ass'n v. Cal. Pub. Utils. Comm'n*, 36 F.3d 848, 850 (9th Cir. 1994) (citing 16 U.S.C. § 824(a) & (e)).

[5] *Id.*

[6] *Id.*

cogeneration facility.[7] QFs include cogenerating facilities that satisfy the FERC's operating, efficiency, and ownership requirements as designated by section 201 of PURPA.[8]

PURPA delegates expansive authority to state regulatory commissions. "[T]he states play the primary role in calculating avoided costs and in overseeing the contractual relationship between QFs and utilities . . . ."[9] Montana's regulatory commission, the PSC, has "full power of supervision, regulation, and control" of public utilities.[10]

PURPA requires public utilities such as NWE to purchase electric energy and capacity from QFs like PNW to provide for a market for QF's energy.[11] The process obligates the utility to purchase all of the power generated from a particular QF at the utility's avoided cost rate.[12]

---

[7] 16 U.S.C. § 796(18)(A) (2018).

[8] *See* 16 U.S.C. § 796(18)(B).

[9] *Indep. Energy*, 36 F.3d at 856.

[10] MONT. CODE ANN. § 69-3-102 (2017).

[11] *See* 16 U.S.C. § 824a-3(b); *see also* 18 C.F.R. § 292.303 (2018).

[12] *See* Doc. 35 at 3; *See also* MONT. ADMIN. R. 38.5.1903(1)-(2) (2018).

QFs may enter into long-term contracts for the sale of energy and capacity where the rate is calculated by the utility's avoided costs over the term of the contract.[13] "'Avoided costs' are a utility's incremental costs for electric energy or capacity which, but for the purchase from the QF, the utility would generate itself or purchase from another source."[14] Avoided cost rate schedules must be approved by the PSC.[15]

Prior to the commencement of this action, the PSC "approved NWE's Electric Tariff [("Schedule QF-1")], which reflects the standard rates available to developers of [QFs] up to three (3) megawatts in size."[16] NWE alleges its system typically requires: (1) an executed Power Purchase Agreement ("PPA") between the QF and NWE, and (2) interconnection to NWE's distribution system for the development of a QF.[17]

Plaintiff filed suit against NWE on November 16, 2016, in the Montana

---

[13] *See* 18 C.F.R. § 292.304(d)(2).

[14] *Indep. Energy*, 36 F.3d at 851 (citing 18 C.F.R. § 292.101(6)).

[15] *See* MONT. CODE ANN. § 69-3-603 (2017).

[16] *See* Doc. 70 at 3-4.

[17] *See* Doc. 70-3 at 4.

First Judicial District Court for Lewis and Clark County.[18] Removal to this Court took place on January 5, 2017.[19]

PNW and NWE commenced PPA negotiation for facilities not to exceed three megawatt production in January 2016.[20] At that time, the PSC's Schedule QF-1 included the standard non-negotiated tariff rate for QFs of this size.[21] NWE alleges that "[i]n March 2016, [it] received multiple applications requesting PPAs using the standard rate tariff in Schedule QF-1."[22]

In May, 2016, NWE filed its Motion for Emergency Suspension of the QF-1 Tariff for New Solar Qualifying Facilities with Nameplate Capacities Greater than 100 kW[23] with the PSC in which it alleged that without suspension of the Schedule QF-1 standard rates, NWE's customers would suffer harm.[24]

The PSC granted NWE's motion and "suspended [NWE's] obligations under QF-1 tariff option 1(a) standard rates for solar projects greater than 100 kW

---

[18] *See* Doc. 1-2.

[19] *See* Doc. 5.

[20] *See* Doc. 35 at 3-4.

[21] *See* Doc. 35 at 4.

[22] Doc. 70 at 12.

[23] *See* Doc. 70-3.

[24] *See* Doc. 70-3 at 2-3, 8-9, and 12-13.

-5-

pending issuance of a final order."[25] Following the temporary suspension, NWE claims it warned PNW that it could not execute PPAs for any solar QF's of PNW's size that sought a contract with the standard long-term rate.[26] As of June 16, 2016, PNW had not submitted a signed interconnection agreement.[27]

The PSC issued an interim Order ("Order No. 7500"), dated June 16, 2016, granting NWE's motion to temporarily suspend Schedule QF-1 rates for QFs unless the QF had submitted and signed a PPA and had signed a final Small Generator Interconnection Agreement on or before June 16, 2016.[28] PNW filed a motion seeking relief from interim Order No. 7500 on April 3, 2017.[29]

The PSC issued a Final Order ("Order No. 7500c"),[30] dated June 22, 2017, which set new avoided cost rates and denied PNW's motion for relief from Order No. 7500.[31] On July 31, 2017, NWE and PNW submitted a Joint Motion for

---

[25] Docs. 66-2 at 5; 70-10 at 3.

[26] *See* Doc. 35 at 12-13.

[27] *See* Doc. 75-14 at 22 ("The Commission determines that it does not need to define fully executed contracts as it is clear that the four PNWS projects have failed to have executed interconnection agreements in place prior to the suspension pursuant to Order 7500.").

[28] *See* Docs. 66-2 at 18; 70-7 at 18.

[29] *See* Doc. 70-9.

[30] *See* Docs. 66-2 at 30-71; 70-10.

[31] *See* Docs. 66-2 at 67; 70-10 at 39.

Reconsideration and Brief in Support on Behalf of Pacific Northwest Solar, LLC and Northwestern Energy ("Joint Motion") which requested confirmation that the Order No. 7500c was not intended to affect prior executed PPAs.[32]

The PSC issued its Order on Reconsideration ("Order No. 7500d"),[33] dated October 5, 2017, in which it determined that the four PNW projects did not meet the requirements for a legally enforceable obligation as they failed to have executed interconnection agreements prior to June 16, 2016.[34] However, the PSC declined to decide whether the four PPAs constituted contracts, noting that it "still lacks authority over executed contracts under Montana law"[35] and "[a]ny dispute between [NWE] and these projects should be viewed as a contract issue to be resolved in the appropriate court."[36]

At the parties' request,[37] the Court stayed this case to permit the PSC to resolve pending issues connected to the instant case.[38] Following the PSC's Order

---

[32] *See* Docs. 66-3; 75-5.

[33] *See* Doc. 75-14.

[34] *See* Doc. 75-14 at 22.

[35] Doc. 75-14 at 22.

[36] Doc. 75-14 at 24.

[37] *See* Doc. 27.

[38] *See* Doc. 37.

No. 7500c, the parties informed the Court that they settled claims relating to 17 unexecuted PPAs.[39] The First Amended Complaint concerns only claims pertaining to the four executed PPAs.[40]

## Discussion

Federal Rule of Civil Procedure 19 (Required Joinder of Parties) obliges the Court to undertake a three-step test to determine if joinder is required:[41] (1) is the nonparty "necessary" under subsection (a);[42] (2) if "necessary," is joinder "feasible";[43] and (3) if joinder is not "feasible," the Court considers whether the nonparty is "indispensable," or if the action can proceed without the absent party "in 'equity and good conscience.'"[44] "[A]n indispensable absentee is a necessary party whose joinder cannot be effected and in whose absence the court chooses to dismiss rather than proceed."[45] "Indispensability becomes relevant only [if] the

---

[39] *See* Doc. 44 at 4.

[40] *See* Doc. 47.

[41] *See United States v. Bowen*, 172 F.3d 682, 688 (9th Cir. 1999).

[42] *Id.*; *see also Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 867 n.5 (9th Cir. 2004) ("[t]he terms 'necessary' and 'indispensable' are terms of art in Rule 19 jurisprudence.")

[43] Fed. R. Civ. P. 19(b).

[44] *Bowen*, 172 F.3d at 688 (citing Fed. R. Civ. P. 19(b)).

[45] 4 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 19.02[2][d] at 19-16 (3d ed. 2017).

court identifies a necessary party [as one] *whose joinder cannot be effected.*[46]

Joinder is "contingent . . . upon an initial requirement that the absent party *claim* a legally protected interest relating to the subject matter of the action."[47] Factors a court should consider are:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> (2) the extent to which any prejudice could be lessened or avoided by:
>
>> (A) protective provisions in the judgment;
>>
>> (B) shaping the relief; or
>>
>> (C) other measures;
>
> (3) whether a judgment rendered in the person's absence would be adequate; and
>
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.[48]

---

[46] *Id.* at 19-15.

[47] *Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1043 (9th Cir. 1983) (emphasis added).

[48] Fed. R. Civ. P. 19(b).

If the court concludes that the nonparty is a necessary party whose joinder cannot be achieved, the court, on a case-by-case basis,[49] has two options: it may (1) permit the action to proceed without joinder or (2) dismiss.[50]

Analysis

I. **The PSC is not a necessary party under Federal Rule of Civil Procedure 19(a).**

The four projects, represented by the executed PPAs, do not qualify as legally enforceable obligations.[51] Moreover, if the PPAs were to be treated as enforceable contracts, the PSC asserts lack of jurisdiction over executed contracts.[52]

In *Colstrip Energy Limited Partnership v. Montana Power Company*, cited by the PSC in Order 7500d, the state district court considered whether the PSC had jurisdiction over a breach of contract dispute.[53] It concluded that Mont. Code

---

[49] *See Provident Tradesmens Bank & Tr. Co. v. Patterson*, 390 U.S. 102, 118 (1968) ("Whether a person is 'indispensable,' that is, whether a particular lawsuit must be dismissed in the absence of that person, can only be determined in the context of particular litigation.").

[50] *See* Fed. R. Civ. P. 19(b).

[51] *See* Doc. 75-14 at 21.

[52] *See* Doc. 75-14 at 24 (The PSC, in Order 7500d, stated that "[t]hese four projects fail to meet the [PSC's Legally Enforceable Obligation] test prior to the implementation of the stay and, as a result, they do no qualify for the previous standard rates. Any dispute between NorthWestern and these projects should be viewed as a contract issue to be resolved in the appropriate court.")

[53] *See* No. CDV-94-582 LEXIS 206, *6-7 (D. Mont. Jan. 18, 1995).

Ann. § 69-3-603(1), which gives "the PSC jurisdiction to determine rates and conditions of a contract for the sale of electricity where a qualifying facility and a utility cannot come to terms,"[54] did not give the PSC jurisdiction over executed contracts.[55] The state court also noted that the PSC's authorization "to review the rates as part of a rate proceeding,[ ]does not confer jurisdiction over executed agreements on the PSC."[56]

*In re Boulder Hydro L.P.*, the PSC considered issues of contract interpretation.[57] Although it had earlier denied Boulder Hydro's petition for declaratory ruling regarding a price dispute, it underlined:

> (b) *Negotiated rates or terms*. Nothing in [PURPA]:
>
> > (1) Limits the authority of any electric utility or any [QF] to agree to a rate for any purchase, or terms or conditions relating to any purchase, which differ from the rate or terms or conditions which would otherwise be required by this subpart;

---

[54] *Id.* at *3.

[55] *See Id.* at *8.

[56] *Id.* at *6.

[57] *See* Order 7447, *In the Matter of the Petition for Declaratory Ruling of Boulder Hydro Limited Partnership*, Docket No. D2015.7.60, (Dep't of Pub. Serv. Regulation, before the Pub. Serv. Comm'n of the State of Mont., Oct. 27, 2015); *see also* Doc. 75-14 at 23.

(2) Affects the validity of any contract entered into between a [QF] and an electric utility for any purchase.[58]

"[S]ection 292.301(b)(2) provides that [FERC's] avoided cost regulations (and a state's implementation of those regulations) do not affect the validity of any contract entered into between a QF and an electric utility."[59]

A public utility's contract is not, however, completely beyond the reach of the PSC. In *City of Billings v. Public Service Commission*, the Montana Supreme Court held that "[a]ll contracts entered into by a public utility are subject to the paramount authority of the state to exercise its regulatory powers."[60]

The PSC is not a necessary party under either prong of Federal Rule of Civil Procedure 19(a)(1). The Court can provide complete relief without the PSC as a party. "[T]he PSC was not given, and does not have, jurisdiction to adjudicate disputes over executed agreements between utilities and qualifying facilities under Section 69-3-603, MCA."[61] "If relayed consent and a sufficient commitment result

---

[58] 18 C.F.R. § 292.301(b)(1)-(2).

[59] Order 7447 at ¶¶ 11-16 (quoting *Cedar Creek Wind, LLC*, 137 F.E.R.C. 61,006, 61,025 (2011)); *see also* Doc. 75-14 at 23.

[60] *City of Billings v. Pub. Serv. Comm'n*, 631 P.2d 1295 (Mont. 1981).

[61] Doc. 75-14 at 23 (quoting *Colstrip*, 1995 Mont. Dist. LEXIS at *7-8).

in a possible executed contract here, then the [PSC] does not have jurisdiction over contract disputes between QFs and electric utilities."[62] The Court agrees.

The PSC likewise is not a necessary party under Federal Rule of Civil Procedure 19(a)(1)(B). In order to be found necessary under that subsection, the Court must find that the PSC "claims an interest relating to the subject of the action and is so situated that disposing of the action" in the PSC's absence would either "as a practical matter impair or impede [the PSC's] ability to protect the interest; or [would] leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest."[63] The interest requirement is not confined to a legal interest, but "should be determined from a practical, and not technical, perspective."[64]

Here, the PSC asserts lack of authority "to adjudicate disputes over executed agreements."[65] It lacks an interest relating to the subject of the action. Moreover, it

---

[62] Doc. 75-14 at 23 (citing *Colstrip*, 1995 Mont. Dist. LEXIS at *6-7).

[63] Fed. R. Civ. P. 19(a)(1)(B).

[64] *Aguilar v. L.A. Cnty.*, 751 F.2d 1089, 1093 (9th Cir. 1985).

[65] Doc. 75-14 at 23 (citing *Colstrip*, 1995 Mont. Dist. LEXIS at *7).

had notice of the instant action, and has elected not to claim an interest. Joinder is "unnecessary."[66]

The PSC has recognized that "[a]ny dispute between [NWE] and these projects should be viewed as a contract issue to be resolved in the appropriate court."[67] This is a contract dispute, and even if the Court were to order performance under the PPAs with now-replaced Schedule QF-1 rates, the PSC's interest would not be impaired or impeded, nor would NWE be subject to inconsistent obligations. "'Inconsistent obligations occur when a party is unable to comply with one court's order without breaching another court's order concerning the same incident.'"[68] There is no risk of NWE incurring inconsistent obligations in the instant case—PURPA does not affect "the validity of any contract entered into between a [QF] and an electric utility for any purpose."[69] The PSC was aware

---

[66] *See Bowen*, 172 F.3d at 689 ("Here, [the nonparty] was aware of this action and chose not to claim an interest. That being so, the district court did not err by holding that joinder was 'unnecessary.'") (citing *Northrop Corp.*, 705 F.2d at 1043-44).

[67] Doc. 75-14 at 24.

[68] *Cachil Dehe Band of Wintun Indians v. Cal.*, 547 F.3d 962, 976 (9th Cir. 2008) (quoting *Delgado v. Plaza Las Americas, Inc.*, 139 F.3d 1, 3 (1st Cir. 1998) (per curiam).

[69] 18 C.F.R. § 292.301(b)(2) (2018).

of this litigation. It has not claimed an interest. It is not a necessary party. A party deemed unnecessary is by definition not indispensable.[70]

ORDERED:

Defendant NWE's Motion and Notice to Dismiss[71] is DENIED.

DATED this 20th day of August, 2018.

*Sam E. Haddon*
SAM E. HADDON
United States District Judge

---

[70] 4 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 19.02[2][d] at 19-15 to 16 (3d ed. 2017).

[71] Doc. 52.