IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

HELENA DIVISION

| | |
|---|---|
| PACIFIC NORTHWEST SOLAR, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>NORTHWESTERN CORPORATION, A DELAWARE CORPORATION DBA NORTHWESTERN ENERGY,<br><br>Defendant. | No. CV-16-114-H-SEH<br><br>**ORDER** |

Plaintiff Pacific Northwest Solar, LLC ("PNW") has moved for summary judgment[1] asserting it is entitled to a judicial declaration that the four executed Power Purchase Agreements ("four PPAs") at issue "executed on or before the [Public Service Commission's] Order No. 7500 are valid, binding and enforceable."[2] Defendant Northwestern Corporation ("NWE") opposes the motion. A hearing on the motion was held on August 6, 2018.[3]

---

[1] Doc. 64.

[2] Doc. 47 at 24.

[3] Doc. 97.

Discussion

The background of the case is detailed in the Court's Order of August 20, 2018, denying Defendant's Motion and Notice to Dismiss[4] and its Order of August 21, 2018, denying Defendant Northwestern Corporation, D/B/A Northwestern Energy's Motion for Partial Summary Judgment by Reason of Impossibility of Performance.[5] Additional discussion of the case history is unnecessary.

Montana law applies.[6] Moreover, the choice of law provision in the four PPAs specifies that they "shall be construed and interpreted in accordance with the laws of the State of Montana or the United States, as applicable, excluding any choice of law rules which may direct the application of the laws of another jurisdiction."[7]

The existence of a contract is a question of law.[8] Contracts are comprised of four elements: "(1) identifiable parties capable of contracting; (2) their consent;

---

[4] Doc. 102.

[5] Doc. 104.

[6] *See Med. Lab. Mgmt. Consultants v. Am. Broad. Co., Inc.*, 306 F.3d 806, 812 (9th Cir. 2002) (Noting that when a federal district court's jurisdiction is based on diversity, the substantive law of the forum state applies.).

[7] Doc. 66-1 at 33, 75, 117 and 159.

[8] *Murphy v. Home Depot*, 270 P.3d 72, 74 (Mont. 2012).

(3) a lawful object; and (4) a sufficient cause or consideration."⁹

PNW and NWE are identifiable parties with the capacity to contract.¹⁰ NWE does not dispute that "PNW is a distributive and utility-scale solar energy developer headquartered in Oregon [that] develops projects throughout the United States."¹¹ Further, there is no dispute that NWE is "a Delaware corporation doing business in Montana as an investor-owned utility."¹²

"Consent can be communicated with effect only by some act or omission of the party contracting by which the party intends to communicate it or that necessarily tends to the communication."¹³ "Mutual consent consists of an offer and an acceptance of that offer."¹⁴ "[W]hether mutual consent exists [is] based on the consent that the parties express through their words and the consent that the parties imply through their conduct."¹⁵ The parties' signatures constitute "effective

---

⁹ MONT. CODE ANN. § 28-2-102 (2017).

¹⁰ *See* Doc. 70 at 2.

¹¹ *See* Doc. 70 at 2.

¹² *See* Doc. 70 at 3.

¹³ MONT. CODE ANN. § 28-2-501(1) (2017).

¹⁴ *Bitterroot Int'l Sys. Ltd. v. W. Star Trucks, Inc.*, 153 P.3d 627, 635 (Mont. 2007) (citing *Daniels v. Thomas, Dean & Hoskins, Inc.*, 804 P.2d 359, 363 (Mont. 1990)).

¹⁵ *Id.* (citing *Weinberg v. Farmers State Bank of Worden*, 752 P.2d 719, 728-29 (Mont. 1988); MONT. CODE ANN. §§ 28-2-103, 501, 503; Restatement (Second) of Contracts §§ 4, 19).

consent" to a contract under Mont. Code Ann. § 28-5-501(1).[16] Mutual consent is present here. Both PNW and NWE signed the four PPAs.[17]

As for a lawful object, "[t]he object of the contract must be lawful when the contract is made and possible and ascertainable by the time the contract is to be performed."[18] The four PPAs concern the generation and sale of solar energy.[19] The object of the contracts was lawful at the time of creation.

Consideration is:

> Any benefit conferred or agreed to be conferred upon the promisor by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered or agreed to be suffered by the person, other than prejudice that the person is at the time of consent lawfully bound to suffer, as an inducement to the promisor . . . .[20]

Further, "[a] written instrument is presumptive evidence of a consideration."[21] The four PPAs, as written instruments by which PNW agrees to "deliver to the Point of

---

[16] *Devon Oil & Gas Co. v. Ayers*, 707 P.2d 523, 525 (Mont. 1985).

[17] Doc. 70 at 4 and 9.

[18] MONT. CODE ANN. § 28-2-602 (2017).

[19] *See* Docs. 66-1; 70 at 2.

[20] MONT. CODE ANN. § 28-2-801 (2017).

[21] MONT. CODE ANN. § 28-2-804 (2017).

Interconnection and sell to [NWE], and [NWE] shall purchase from [PNW], on and after the In-Service Date and for the remaining Term of this Agreement, all of the Energy output of the facility"[22] fulfill the final requirement for an enforceable contract.

Under PURPA, a QF may become bound to a utility either through a contract, or through a LEO.[23] However, the Montana Public Service Commission ("PSC") has declined to decide whether the four PPAs constitute contracts, noting that it "still lacks authority over executed contracts under Montana law"[24] and that "[a]ny dispute between [NWE] and these projects should be viewed as a contract issue to be resolved in the appropriate court."[25]

---

[22] Doc. 66-1 at 15, 57, 99 and 141.

[23] *See JD Wind 1, LLC,* 129 F.E.R.C. ¶ 61,148, 61633 (F.E.R.C. November 19, 2009) ("[A] QF has the option to commit itself to sell all or part of its electric output to an electric utility. While this may be done through a contract, if the electric utility refuses to sign a contract, the QF may seek state regulatory authority assistance to enforce the PURPA-imposed obligation on the electric utility to purchase from the QF, and a non-contractual, but still legally enforceable, obligation will be created pursuant to the state's implementation of PURPA. Accordingly, a QF, by committing itself to sell to an electric utility, also commits the electric utility to buy from the QF; these commitments result either in contracts or in non-contractual, but binding, legally enforceable obligations.").

[24] Doc. 75-14 at 22.

[25] Doc. 75-14 at 24.

As discussed in the Court's Order of August 20, 2018[26] and its Order of August 21, 2018,[27] while the PSC may "play the primary role in calculating avoided costs and in overseeing the contractual relationship between QFs and utilities,"[28] it lacks jurisdiction over executed contracts.[29] "[T]he PSC was not given, and does not have, jurisdiction to adjudicate disputes over executed agreements between utilities and qualifying facilities under Section 69-3-603, MCA."[30] The PSC has clearly stated its position that "[a]ny dispute between [NWE] and these projects should be viewed as a contract issue to be resolved in the appropriate court."[31] However, discovery in this case is not yet closed.[32]

On August 16, 2018, NWE submitted its Revised First Set of Interrogatories

---

[26] Doc. 102.

[27] Doc. 104.

[28] *Indep. Energy Producing Assoc., Inc. v. Cal. Pub. Utilities Comm'n*, 36 F.3d 848, 856 (9th Cir. 1994) (citing 16 U.S.C. § 824(a) & (e)).

[29] *See* Doc. 75-14 at 22.

[30] Doc. 75-14 at 23 (citing *Colstrip Energy Ltd. P'ship v. Mont. Power Co.*, No. CDV-94-582 LEXIS 206, *7-8 (D. Mont. Jan. 18, 1995)).

[31] Doc. 75-14 at 24.

[32] Discovery closes on November 9, 2018. Doc. 68 at 2.

to Plaintiff, responses to which will be due on September 17, 2018.[33] Since the yet-to-be-provided answers to those questions may well bear directly upon NWE's arguments in support of its impossibility of performance defense and issues directly related to it, such issues cannot reasonably be addressed or decided until discovery is completed.

ORDERED:

1. Plaintiff's Motion for Summary Judgment on its Sixth Cause of Action[34] is premature.

2. The motion is DENIED without prejudice to renewal if appropriate by order of the Court upon showing of good cause after close of discovery.

DATED this 21st day of August, 2018.

SAM E. HADDON
United States District Judge

---

[33] FED. R. CIV. P. 33(b)(2) ("The responding party must serve its answers and any objections within 30 days after being served with the interrogatories.").

[34] Doc. 64.