**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF MONTANA**

**HELENA DIVISION**

PACIFIC NORTHWEST SOLAR, LLC,

Plaintiff,

vs.

NORTHWESTERN CORPORATION, A DELAWARE CORPORATION DBA NORTHWESTERN ENERGY,

Defendant.

No. CV-16-114-H-SEH

**ORDER & MEMORANDUM**

## BACKGROUND

This case involves a contract dispute between Pacific Northwest Solar, LLC ("PNS") and NorthWestern Corporation ("NWE"),[1] filed November 16, 2016,[2] and

[1] *See* Doc. 314 at 1.
[2] *See* Doc. 5-2.

removed to this Court on January 5, 2017.[3]

On August 21, 2018, the Court issued its Order denying Defendant's Motion for Partial Summary Judgment by Reason of Impossibility of Performance.[4] The "Background" section of that Order[5] is relevant to issues now before the Court and, to the extent necessary and appropriate, incorporated by reference.[6] A Final Pretrial Order was filed November 1, 2019.[7] Trial was set for June 2, 2020.[8]

Plaintiff filed an Unopposed Motion to Dismiss for the Purpose of Appeal to the Ninth Circuit Court Appeals[9] with brief in support on April 2, 2020.[10] The motion was denied as "neither procedurally nor substantively appropriate,"[11] the Court ruling, in part, "[t]he several orders issued in this case to date are, by language and content, interlocutory, [and] subject to modification or vacation if necessary or appropriate."[12]

---

[3] *See* Doc. 5.
[4] *See* Doc. 104.
[5] *See* Doc. 104 at 1-9.
[6] Doc. 339.
[7] *See* Doc. 314.
[8] *See* Doc. 322 at 1.
[9] Doc. 324.
[10] Doc. 325.
[11] Doc. 326 at 6.
[12] Doc. 326 at 5 (citing *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001)).

The trial set for June 2, 2020, was vacated on April 24, 2020, due to the COVID-19 pandemic.[13] The case remained inactive and dormant for over a year.

A Joint Motion for Adjudication of Liability Issues by Court[14] was filed on June 4, 2021. A status conference was held on June 9, 2021, at which the Court inquired, "[d]o we have a stipulation that the court may rely upon that all liability issues that are before this court in this case as of today are of a record that is sufficient for both parties to assert that the decisions on those issues can be resolved by the court as matters of law?" and to which the parties answered affirmatively.[15] Opening, response, and optional reply briefs directed to the remaining liability issues were ordered on June 10, 2021.[16] Briefs as ordered were filed.[17]

## DISCUSSION

Remaining liability issues framed by the Final Pretrial Order are ripe for resolution on the current record.

### The Four Power Purchase Agreement ("PPA") Contracts

Four Power Purchase Agreements ("Four PPAs") at issue are the Benton,

---

[13] Doc. 331.
[14] Doc. 339.
[15] *See* Doc. 345 at 6-7.
[16] Doc. 344.
[17] *See* Docs. 346, 347, 348, 349, 350, and 351.

Bootlegger, Choteau, and Manta projects.[18] Plaintiff argues in its brief "that the Four PPAs were enforceable contracts under Montana law and NWE had no valid excuse for its decision to breach those contracts."[19] Defendant asserts in its brief "[PNS'] claims should also be dismissed because the Plaintiff has failed to satisfy a necessary condition precedent contained in the four PPAs at issue; namely, that before NWE can purchase power from a [PNS] solar plant, [PNS] and NWE must execute an applicable Interconnection Agreement."[20]

NWE and PNS executed the Four PPAs on or before June 9, 2016.[21] All provided, "[p]rior to the In-Service Date, and as a condition of NorthWestern's acceptance of Energy from Seller and NorthWestern's obligation to pay for Energy . . . Seller shall have entered into the Generator Interconnection Agreement with the Transmission Provider in accordance with Section 6.2 of this Agreement."[22] "NWE advised Plaintiff [on June 16, 2016] that as a result of the PSC's action [suspending the QF-1 rate], NWE could not execute a new Interconnection Agreement."[23]

On June 16, 2016, NWE repudiated the four fully executed PPAs before the

---

[18] *See* Doc. 314 at 5.
[19] Doc. 346 at 9.
[20] Doc. 347 at 44.
[21] Doc. 314 at ¶¶ 11-12.
[22] *See e.g.* Doc. 66-1 at 13.
[23] Doc. 70 at ¶ 46.

In-Service Date.[24] NWE's asserted defense of failure to satisfy a condition precedent is not available. The Four PPAs are valid and enforceable contracts.

NWE's Defense of Impossibility[25]

As stated above, both NWE and PNS had executed the Four PPAs on or before June 9, 2016.[26] On June 16, 2016, the MTPSC issued a Notice of Commission Action that granted NWE's request for an emergency suspension, in which it suspended "the availability of NWE's Schedule QF-1 rates for solar QFs larger than 100 kilowatts unless the QF had submitted a signed PPA and executed an interconnection agreement on or before June 16, 2016."[27] NWE filed a Motion for Emergency Suspension of the QF-1 Tariff for New Solar Qualifying Facilities with Nameplate Capacities Greater than 100 kW with the Montana Public Service Commission ("MTPSC") on May 17, 2016.[28] "NWE [then] advised Plaintiff that as a result of the PSC's action, NWE could not execute a new Interconnection

---

[24] The Four PPAs required substantial completion of the power producing facility 360 days after the Effective Date. (*See e.g.* 66-1 at 11). PNS could not transmit power until the facility was completed. The Four PPAs did not have an Effective Date defined. However, construing the terms of the Four PPAs in a light most favorable to NWE, the earliest possible Effective Date would have been June 9, 2016–the date of execution of the Four PPAs. Therefore, the earliest possible In-Service Date, allowing 360 days after the Effective Date for construction of the facility, would have been June 4, 2017. NWE repudiated the Four PPAs on June 16, 2016.

[25] NWE's impossibility and associated force majeure defenses have been extensively briefed by the parties and considered by the Court. *See* Docs. 60, 61, 62, 72, 77, 81, 94, 97, 104, 266, 269, 270, 346, 347, 348, 349, 350, and 351.

[26] Doc. 314 at 5.

[27] Doc. 75 at 4; *see* Doc. 75-13.

[28] *See* Docs. 75 at 3; 75-7 at 2-3, 8-9, and 12-13.

Agreement . . . "[29]

The Montana Supreme Court, the United States Congress and the Federal Energy Regulatory Commission ("FERC") all have recognized that a Qualifying Facility ("QF") and utility may separately contract to sell power.

> Under its PURPA authority, see 16 U.S.C. § 824a-3(a), the Federal Energy Regulatory Commission ("FERC") has established that a QF can sell power to a utility via a LEO, rather than under a contract. 18 C.F.R. § 292.304(d)(2); see *Midwest Renewable Energy Projects*, LLC, 116 FERC ¶ 61017, 61073 (July 7, 2006) (holding "[t]hat Congress used the term 'contract or obligation' in drafting section 210(m)(6) [16 U.S.C. § 824a-3(m)(6)] suggests that Congress intended that the Commission continue to protect both contracts and obligations that had not yet ripened into contracts but were 'in effect or pending approval' ").[30]

As noted above, this case involves four valid and enforceable contracts–the Four PPAs, not a legally enforceable obligation ("LEO"). NWE and PNS had the legal capacity to enter into contracts to buy and sell power separate and apart from the MTPSC QF-1 rate schedule. Moreover, the MTPSC itself has acknowledged in discussing the dispute between NWE and PNS, that "the [MTPSC] still lacks authority over executed contracts under Montana law."[31]

---

[29] Doc. 70 at ¶ 46.

[30] *MTSUN, LLC v. Montana Dep't Pub. Serv. Regul.*, 472 P.3d 1154, 1158 (Mont. 2020).

[31] Doc. 75-14 at 22.

The Four PPAs at issue in this case incorporated the QF-1 standard tariff rate.[32] NWE executed the Four PPAs with the QF-1 rate,[33] then sought to suspend the QF-1 rate,[34] and later, because the MTPSC had suspended the QF-1 rate, repudiated the Four PPAs with PNS.[35] It is in no position to complain of the result which followed.

"If . . . the buyer forecasts the market incorrectly and therefore finds himself locked into a disadvantageous contract, he has only himself to blame and so cannot shift the risk back to the seller by invoking impossibility or related doctrines."[36] NWE's assertion that the MTPSC action rendered its performance impossible or illegal did not relieve NWE of its performance obligations under the Four PPAs or preclude NWE from purchasing electricity from PNS at the contracted QF-1 rate.

Force majeure is "an event or circumstance which prevents one Party from performing its obligations under [an] Agreement, *which is not within the reasonable control or the result of an act or omission of the claiming Party.*"[37]

---

[32] *See* Doc. 314 at ¶ 14.

[33] *See* Doc. 314 at ¶ 14.

[34] *See* Docs. 75 at 3; 75-7 at 2-3, 8-9, and 12-13.

[35] Doc. 70 at ¶ 46.

[36] *Northern Indiana Pub. Serv. Co. v. Carbon Cnty Coal Co.*, 799 F.2d 265, 278 (7th Cir. 1986) (citing Farnsworth, Contracts at 680 and n.18 (1984); White & Summers, Handbook of the Law Under the Uniform Commercial Code 133 (2d ed. 1980)

[37] *See* Doc. 66-1 at 30 (emphasis added).

The suspension of the QF-1 rate was such an action that NWE sought and that was within its control.

NWE's impossibility and force majeure defenses to performance of the Four PPAs are unavailable to NWE.

NWE's Remaining Defenses

NWE has asserted numerous other defenses[38] to performance raised as legal issues in the Final Pretrial Order. None have application to this matter. The Four PPAs were supported by adequate consideration, the Court has jurisdiction, and the claims are properly asserted.

NWE conceded at the June 9, 2021, status conference that if none of its defenses to liability were available, a breach of the Four PPAs occurred.[39] NWE breached the Four PPAs. The remaining issue for trial is what, if any, damages resulted from NWE's breach.

ORDERED:

1. This Order supersedes and replaces any conflict between this Order and prior rulings.

2. The Four PPAs between PNS and NWE are valid and enforceable

---

[38] *See* Doc. 314 at 10-12.

[39] *See* Doc. 345 at 22-23.

contracts.

3. NWE's asserted defenses to performance of the Four PPAs are unavailable.

4. NWE breached the Four PPAs on June 16, 2016, when it repudiated and refused to perform the Four PPAs.

5. The remaining issue for trial is what damages, if any, resulted from NWE's breach of the Four PPAs.

6. A conference call with counsel to address necessary revisions of deadlines and requirements for a revised final pretrial order will be set by separate order.

DATED this 30th day of August, 2021.

Sam E Haddon

SAM E. HADDON
United States District Judge