IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| PACIFIC NORTHWEST SOLAR, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>NORTHWESTERN CORPORATION,<br>A DELAWARE CORPORATION d/b/a<br>NORTHWESTERN ENERGY,<br><br>Defendant. | No. CV-16-114-H-BMM<br><br>**ORDER** |

## INTRODUCTION

Plaintiff Pacific Northwest Solar, LLC ("Pacific Solar") has filed three motions in limine seeking to exclude evidence for the upcoming trial on March 4, 2024. (Doc. 491; Doc. 497; Doc. 505.) Defendant Northwestern Corporation ("Northwestern") opposes those motions. Northwestern also filed two motions in limine that Pacific Solar opposes. (Doc. 494; Doc. 500.) The Court held a hearing on the motions on February 26, 2024. (Doc. 519.)

## BACKGROUND

Pacific Solar entered contracts with Northwestern for the sale of electricity from four proposed solar farms. (Doc. 469 at 2.) The contracts used the standard rate set by the Montana Public Service Commission ("MPSC") for Northwestern for the sale. (*Id.*) MPSC suspended Northwestern's standard rate two weeks after

1

Northwestern and Pacific Solar entered the contract. (*Id.*) Northwestern repudiated the contracts at that time. (*Id.*) Pacific Solar sued for breach of contract. (*Id.*) The District Court found Northwestern liable for breaching the contracts. (*Id.*) The parties proceeded to a jury trial on the issue of damages, where the jury returned a verdict of $480,000 in favor of Pacific Solar. (*Id.*)

Both parties appealed. Pacific Solar challenged the District Court's sua sponte exclusion of any evidence of Pacific Solar's other projects or development fees. (*Id.* at 3.) Pacific Solar also challenged the District Court's refusal to allow Pacific Solar to refresh the recollection of its founder as to the valuation model. (*Id.* at 4–5.) Pacific Solar further challenged the District Court's refusal to admit evidence of the valuation model or testimony regarding the contents of the model. (*Id.* at 5.) Finally, Pacific Solar challenged the District Court's refusal to instruct the jury that a party cannot benefit from its own wrongdoing. (*Id.* at 6.) Northwestern challenged the District Court's determination that Northwestern proved liable for breach of contract and the District Court's instruction to the jury that Pacific Solar could receive lost profits. (*Id.* at 8–10.)

The Ninth Circuit identified three errors made by the District Court. The Ninth Circuit first determined that the District Court erred in sua sponte excluding evidence of Pacific Solar's other projects and development fees because such evidence proved probative. (*Id.* at 3–4.) The Ninth Circuit determined that the District Court also

2

erred in refusing to allow Pacific Solar to refresh the recollection of its founder on the valuation model. (*Id.* at 4–5.) Finally, the Ninth Circuit concluded that the District Court erred in instructing the jury that they could award Pacific Solar lost profits. (*Id.* at 10.) The contracts expressly precluded such recovery. (*Id.*)

The Ninth Circuit rejected Pacific Solar's challenge as to the admissibility of the valuation model. (*Id.* at 5–6.) The Ninth Circuit determined that Pacific Solar had failed to appropriately lay foundation. (*Id.* at 5.) The Ninth Circuit further rejected Northwestern's challenge as to liability. (*Id.* at 8–10.)

## STANDARD OF REVIEW

Motions in limine serve as procedural mechanisms "to limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009). The decision on a motion in limine is committed to the district court's discretion, including the decision of whether to reserve ruling until trial. *See United States v. Bensimon*, 172 F.3d 1121, 1127 (9th Cir. 1999). Motions in limine "should not be used to resolve factual disputes or weigh evidence." *BNSF R.R. v. Quad City Testing Lab., Inc.*, CV-07-170-BLG-RFC, 2010 U.S. Dist. LEXIS 113888, at *1 (D. Mont. Oct. 26, 2010).

A court will grant a motion in limine only if "the evidence is 'inadmissible on all potential grounds.'" *Frost v. BNSF Ry. Co.*, 218 F. Supp. 3d 1122, 1133 (D. Mont. 2016) (quoting *Quad City Testing Lab.*, 2010 U.S. Dist. LEXIS 113888 at *1).

3

"[D]enial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted at trial. Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded." *Ducheneaux v. Lower Yellowstone Rural Elec. Ass'n*, No. CV 19-6-BLG-TJC, 2021 U.S. Dist. LEXIS 98985 at *25 (D. Mont. May 25, 2021) (internal quotations omitted).

Evidentiary rulings must be deferred until trial if evidence fails to meet the "inadmissible on all potential grounds standard." *Quad City Testing Lab.*, 2010 U.S. Dist. LEXIS 113888 at *2. To defer rulings on motions in limine allows a court to place "questions of foundation, relevancy and potential prejudice . . . in proper context." *Id.* (internal quotations omitted). A court may alter its ruling on a motion in limine if trial brings to light facts that the court failed to anticipate in its earlier ruling. *Bensimon*, 172 F.3d at 1127.

## DISCUSSION

Pacific Solar filed three motions in limine concerning the following issues: (1) damages and a requested jury instruction (Doc. 491); (2) the decision of the MPSC (Doc. 497); and (3) the admission of the valuation model (Doc. 505). Northwestern filed two motions in limine concerning the following issues: (1) lost profits and consequential damages (Doc. 494); and (2) monies received from the sale of non-Montana projects (Doc. 500). The Court will address the motions concerning

damages and lost profits together as they concern the same issue. The Court will address the remaining motions in the order in which they were filed.

I. **Damages and Lost Profits**

Pacific Solar asks the Court to prohibit Northwestern from arguing that the contracts preclude damages for the "developer's fee." Pacific Solar argues that the developer's fee constitutes the value of the four projects at the time of the repudiation. Pacific Solar contends that the Ninth Circuit already has determined that Pacific Solar is entitled to the developer's fee. Pacific Solar points to the Ninth Circuit's statement that "Pacific was entitled to damages equal to the value of the four proposed projects in June 2016, when Northwestern repudiated the contracts." (Doc. 492 at 6–9 (citing Doc. 469 at 10).)

Northwestern argues that the developer's fee constitutes lost profits or consequential damages whose recovery the contracts expressly prohibit. (Doc. 495 at 7–11.) Northwestern cites to Pacific Solar's method of calculating the developer's fee as evidence that the developer's fee constitutes lost profits. (*Id.* at 8.) The calculation takes the projected net revenue from the project and subtracts the operational, development, engineering, and other costs to determine the developer's fee. (Doc. 495-2 at 3–4.) For example, if the buyer expects to earn $6 million in net profits from a project but the costs of building the project would be $5 million, the buyer would be willing to pay up to $1 million in a developer's fee. (*Id.*)

5

Northwestern's argument that the developer's fee constitutes "lost profits" ignores the Ninth Circuit's express rejection of Northwestern's argument that "in seeking recovery of developer's fees on the four projects, Pacific was only seeking lost profits." (Doc. 469 at 10.) The Ninth Circuit declined to reduce the jury award to zero. (*Id.*) Contrary to how Northwestern frames that decision, nothing in the Ninth Circuit's memorandum indicates that this decision was based on insufficient evidence in the appellate record. (Doc. 499 at 9.)

The Ninth Circuit's memorandum further provided that "Pacific was entitled to damages equal to the value of the four proposed projects in June 2016, when Northwestern repudiated the contracts." (Doc. 469 at 6.) In fact, the Ninth Circuit affirmed the District Court's rejection of a jury instruction based on the Ninth Circuit's conclusion that Pacific Solar was entitled to damages equal to the value of the projects at the time of repudiation, not to the value of such projects had they been completed in the future. (*Id.* at 6–7.) Moreover, the Ninth Circuit cited *Schonfeld v. Hilliard*, 218 F.3d 164, 177 (2d Cir. 2000), when it rejected Northwestern's argument that the developer's fee constituted lost profits. (Doc. 469 at 10.)

The Second Circuit in *Schonfeld* distinguished between damages for the market value of a lost income-producing asset and damages for lost profits. *Id.* at 175. The Second Circuit clarified as follows:

> [w]hen the defendant's conduct results in the loss of an income-producing asset with an ascertainable market value, the most accurate

> and immediate measure of damages is the market value of the asset at the time of breach - not the lost profits that the asset could have produced in the future.

*Id.* at 176. The citation by the Ninth Circuit to *Schonfeld* suggests that the Ninth Circuit applied the same reasoning to distinguish the developer's fee from lost profits. Lost profits would be the money that could have been made from the solar farms themselves. The developer's fee represents the amount that a person or company would pay for the projects for the chance of earning those profits. The Ninth Circuit considered and answered whether the value of the projects represented "lost profits" whose recovery the contract precluded.

The one characterization of the damages as lost profits at trial in Pacific Solar's opening statement also proves insufficient to rise to the level of a judicial admission. Pacific Solar's counsel misspoke at one point and one point only during the trial. Pacific Solar repeatedly referred to the "value" of the projects rather than the "profits" elsewhere throughout the trial. It would prove unfair to count one misstatement by Pacific Solar in its opening as a judicial admission that bars recovery of an amount the Ninth Circuit itself suggested represents the appropriate measure of damages.

Finally, Northwestern correctly notes that *Schonfeld* characterizes the value of an income producing asset as a consequential damage. Northwestern argues that the consequential damages limitation set forth in the contract proves enforceable,

like the lost profits provision recognized by the Ninth Circuit. Northwestern failed, however, to raise any argument before this motion that the developer's fee constituted consequential damages other than lost profits. Northwestern only raised arguments concerning lost profits at both the Ninth Circuit and in the first trial in the District Court.

Northwestern argues that the Ninth Circuit rejected any argument that Northwestern waived its defense relating to "other consequential damages." The Ninth Circuit addressed the "lost profits" argument raised by Northwestern. Northwestern notes that the lost profits limitation is contained in the same paragraph of the contracts as the "consequential damages" limitation. The Ninth Circuit's opinion never mentions consequential damages. Importantly, had the Ninth Circuit determined that Northwestern's defense relating to "other consequential damages" remained intact, the decision to remand would have made little sense given the Ninth Circuit's reliance on *Schonfeld*.

Northwestern failed to give the District Court in the first instance, or the Ninth Circuit on appeal, an opportunity to address the merits of Northwestern's "other consequential damages" defense. Northwestern failed to raise this defense for nearly seven years. To allow Northwestern to raise the "consequential damages" argument after their "lost profits" argument failed at the Ninth Circuit would be improper. "[W]e need not and do not consider a new contention that could have been but was

not raised on the prior appeal. Permitting a case to proceed to a decision on the merits before asserting a previously available defense undermines the integrity of the judicial system, wastes judicial resources, and imposes substantial costs upon the litigants." *Lowery v. Channel Comm'n Inc.*, 539 F.3d 1150, 1155 (9th Cir. 2008) (internal citations omitted). The Court finds that Northwestern waived its defense as to "other consequential damages." The Court will deny Northwestern's motion in limine. (Doc. 494.) The Court will grant Pacific Solar's motion in limine to prevent Northwestern from arguing that the developer's fee constitutes lost profits or consequential damages. (Doc. 491.) The Court has instructed the parties to work together to draft an appropriate jury instruction on damages. The parties must file this proposed instruction by 5:00 p.m. on Friday, March 1, 2024.

## II. Decision of the MPSC

Pacific Solar asks the Court to exclude evidence of the MPSC's decision to suspend Northwestern's obligatory rate for solar projects greater than 100kW. Pacific Solar notes that liability has been established and that the Ninth Circuit rejected Northwestern's argument that the MPSC's decision rendered performance of the contracts impossible. The Ninth Circuit determined that "[t]he MPSC's subsequent rate suspension did not affect executed contracts" and that "the MPSC's orders had no legal effect on the Parties' agreements." (Doc. 469 at 8, 10).

Northwestern admits that liability has been determined. Northwestern notes, however, that Pacific Solar previously made arguments about Northwestern's state of mind in breaching the contracts. Northwestern seeks to introduce the MPSC's decisions only if Pacific Solar opens the door to Northwestern's state of mind.

The MPSC's decisions prove irrelevant to liability and irrelevant to this damages-only trial. Northwestern's state of mind also proves irrelevant. If Pacific Solar attempts to argue bad faith in breaching the contracts, Northwestern may be allowed to introduce evidence of the MPSC's decisions. The Court will deny Pacific Solar's motion on this issue because the evidence may prove relevant if Pacific Solar puts Northwestern's state of mind at issue. The parties must request a sidebar before introducing any evidence regarding Northwestern's state of mind or the MPSC's decisions.

### III. Monies Received from the Sale of non-Montana Pacific Solar Projects

Northwestern asks the Court to exclude evidence of the amounts that Pacific Solar received from projects outside Montana. Northwestern argues that monies received by Pacific Solar on non-Montana projects prove irrelevant to the amount that Pacific Solar would have received on the projects at issue. Northwestern relies on the deposition of Pacific Solar's representative to support their argument. In relevant part, Pacific Solar's representative responded as follows in his deposition:

> **Q.** Are you -- are you able to take the economics of one project and recalculate them to fit another project?

> **A.**   I guess I'm not sure what you're asking.
> **Q.**   Okay.
> **A**.   So a project is evaluated in and of itself, so we would look at the inputs in each specific project to determine the value of that project.
> **Q.**   So in other -- let me see if I understand your answer. I think what you're telling us is that to value a specific project, you have to look at the specific economic variables for that particular project and you can't use the economic factors that you used on the other projects; is that correct?
> **A.**   That's correct.
> **Q.**   Are you able to say, Well, because we got this much money for Moore's Hollow, we would've gotten so much money for any of the four Montana projects?
> **A.**   No. I mean, the Montana projects would need to be evaluated based on their inputs to determine if they were valuable assets.

(Doc. 501-1 at 5–8.)

Pacific Solar argues that the monies received by Pacific Solar in non-Montana sales prove relevant to whether and how much Pacific Solar would have earned from the four contracted projects in Montana. Pacific Solar notes that Northwestern previously filed motions to compel in which Northwestern argued that Pacific Solar's claimed damages "raised questions of whether [Pacific] had received developer's fees on other solar projects and, if so, the amount of those fees." (Doc. 239 at 3–4.)

The Ninth Circuit addressed the District Court's sua sponte exclusion of Pacific Solar's other projects. (*Id.* at 3.) The Ninth Circuit undertook a de novo review as to whether such evidence should have been excluded. Northwestern advanced the same arguments at the Ninth Circuit as it advances here regarding the relevance of the non-Montana sales. Northwestern argued to the Ninth Circuit that

"other projects in other states, of different sizes, with different sun exposures, and with different duration and price terms under other states' tariffs" lacked relevance. (Defendant-Appellant's Reply Brief and Response Brief on Cross-Appeal, *Pacific Northwest Solar LLC v. Northwestern Corporation*, 22-35186, Doc. 31 at 37 (9th Cir. Aug. 25, 2022).) The Ninth Circuit determined that the payments received on Pacific Solar's other solar projects "had significant probative value, especially considering Northwestern's argument that Pacific's potential to earn developer fees on the four projects was speculative." (Memorandum of the USCA, *Pacific Northwest Solar LLC v. Northwestern Corporation*, CV-16-114-H-BMM, Doc. 469 at 4 (D. Mont. Aug. 14, 2023).)

The deposition testimony cited by Northwestern undermines the weight, not the relevance, of the other sales. Pacific Solar admitted that each project needs to be valued based on its own variables, but that does not mean that a project's value cannot be estimated by drawing comparisons to similar projects. Northwestern can cross-examine about differences in the non-Montana projects and the contracted projects. The jury should hear the evidence and determine how much weight to give the "comparison" sales based on similarities between the various projects and their economic variables. The Court will deny this motion in limine.

12

## IV. Admissibility of the Valuation Model

Pacific Solar seeks a ruling that the model for valuing projects ("valuation model") proves admissible. (Doc. 506 at 14.) Pacific Solar argues that the valuation model constitutes a business record admissible under Fed. R. Evid. 803(6). (*Id.* at 9–12.) The Ninth Circuit briefly addressed whether the District Court erred in excluding the valuation model in the first trial. The Ninth Circuit determined that "Pacific did not lay the proper foundation at trial to show either that the financial model 'was kept in the course of a regularly conducted activity of a business' and that 'making the record was a regular practice of that activity.'" (Doc. 469 at 5 (quoting Fed. R. Evid. 803(6)).) Pacific Solar now seeks to lay the requisite foundation.

"A record of an act, event, condition, opinion, or diagnosis" is not prohibited by the rule against hearsay if:

> (A)  the record was made at or near the time by—or from information transmitted by—someone with knowledge;
>
> (B)  the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>
> (C)  making the record was a regular practice of that activity;
>
> (D)  all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>
> (E)  the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6).

Pacific Solar has submitted an affidavit by William Stephen Schmitt, ("Schmitt") one of the founders of Pacific Solar. (Doc. 506-2.) Schmitt's affidavit provides that he regularly makes, updates, and maintains financial models to estimate the value of proposed and ongoing solar projects for Pacific Solar. (*Id.* at 2.) Schmitt's affidavit explains that Schmitt has developed a base model from his years of doing business in the solar industry. (*Id.*) Pacific Solar then modifies that model by plugging in more specific information related to construction costs, energy output, taxes, and other variables as such information becomes more available. (*Id.* at 2–3.) Schmitt's affidavit attests that Pacific Solar uses this model for nearly every project to inform company decisions as to whether to pursue the projects. (*Id.* at 3.) Schmitt's affidavit also attests that such modeling practices are standard in the solar industry for buyers and sellers. (*Id.* at 2.) Schmitt used the base model and updated cost data and production estimates to value the four projects at issue in this case. (*Id.* at 3–4.)

Pacific Solar has appropriately laid the foundation to establish that the business records exception to the hearsay rule applies. Pacific Solar kept the valuation model in the course of a regularly conducted business activity—valuing solar projects and potential development opportunities. Pacific Solar regularly used the model to estimate the value of solar projects. The valuation model for the specific

projects was created and updated at or near the time the information used by the model became available. (Doc. 506-2 at 4.) The custodian and creator, Schmitt, has attested to these facts. (Doc. 506-2.) Northwestern may raise any specific objections regarding the adequacy of the foundation or relevancy during the course of the trial.

## CONCLUSION

The Ninth Circuit already has determined that Pacific Solar is entitled to recover the value of the projects at the time of repudiation and that such damages do not constitute lost profits. The Court further finds that Northwestern has waived its "other consequential damages" defense. The monies received by Pacific Solar for non-Montana projects prove relevant and admissible. The MPSC's decisions prove irrelevant but may become relevant if Pacific Solar opens the door to Northwestern's reasons for having breached the contract. Finally, the valuation model proves admissible.

## ORDER

Accordingly, **IT IS ORDERED:**

1.) Pacific Solar's Motion in Limine Regarding Damages (Doc. 491) is **GRANTED**. The Court has instructed the parties to work together to draft an appropriate jury instruction on damages. The parties must file this proposed instruction by 5:00 p.m. on Friday, March 1, 2024.

2.) Northwestern's Motion in Limine Regarding Lost Profits and Consequential Damages (Doc. 494) is **DENIED**.

3.) Pacific Solar's Motion in Limine Regarding the MPSC's Decision (Doc. 497) is **DENIED**.

4.) Northwestern's Motion in Limine Regarding the Monies Received from non-Montana Sales (Doc. 500) is **DENIED**.

5.) Pacific Solar's Motion in Limine Regarding Admission of the Valuation Model (Doc. 505) is **GRANTED**.

DATED this 29th day of February, 2024.

_____
Brian Morris, Chief District Judge
United States District Court