**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION**

| | |
|---|---|
| PACIFIC NORTHWEST SOLAR, LLC, | No. CV-16-114-H-BMM |
| Plaintiff, | |
| vs. | **ORDER** |
| NORTHWESTERN CORPORATION, A DELAWARE CORPORATION d/b/a NORTHWESTERN ENERGY, | |
| Defendant. | |

## INTRODUCTION

The Court held a jury trial in this matter from March 4, 2024, to March 6, 2024. (Doc. 528, Doc. 538; Doc. 547.) Defendant Northwestern Corporation ("Northwestern") filed a motion for judgment as a matter of law at the close of Plaintiff Pacific Northwest Solar, LLC's ("Pacific Solar") case, (Doc. 535.), and orally renewed its motion at the close of its case. Pacific Solar opposed the motion. (Doc. 540.) The Court took the motion under advisement. (Doc. 538.) The jury rendered a verdict of $3.2 million in damages in favor of Pacific Solar on March 6, 2024. (Doc. 550.)

1

## BACKGROUND

Pacific Solar entered four power purchase agreements ("PPAs") with Northwestern for the sale of electricity from four proposed solar farms to be constructed in Montana. (Doc. 469 at 2.) Northwestern later repudiated the contracts. (*Id.*) The District Court found Northwestern liable for breaching the contracts. (*Id.*) The parties proceeded to a jury trial on the issue of damages, where the jury returned a verdict of $480,000 in favor of Pacific Solar. (*Id.*) The Ninth Circuit remanded the case for another trial. The Court refers to its prior order on Northwestern's and Pacific Solar's motions in limine for additional factual background relating to the appeal. (*See* Doc. 523.)

Northwestern's motion for judgment as a matter of law largely reiterates arguments already made and decided in this Court's order on the motions in limine. (Doc. 523.) The Court addresses these arguments again with additional context from the facts and testimony elicited at trial.

## STANDARD OF REVIEW

Rule 50(a) of the Federal Rules of Civil Procedure permits the Court to enter judgment as a matter of law on a claim or defense if the following elements are satisfied: (1) a party has been fully heard on an issue during a jury trial; (2) the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on an issue; and (3) the claim or defense can be maintained or defeated only with a favorable finding on that issue under the controlling law. Fed.

R. Civ. P. 50(a). Stated differently, judgment as a matter of law proves appropriate "only if no reasonable jury could find in favor of the non-moving party." *Ritchie v. United States*, 451 F.3d 1019, 1023 (9th Cir. 2006). "[T]he court must draw all reasonable evidentiary inferences in favor of the non-moving party." *Id.*

## DISCUSSION

Northwestern sets forth three grounds for its motion for judgment as a matter of law. Northwestern first contends that Pacific Solar seeks damages barred by the terms of the PPAs. (Doc. 536 at 4–9.) Northwestern further contends that Pacific Solar bases its damages on completion of the solar projects, contrary to the Ninth Circuit's mandate. (*Id.* at 9–10.) Northwestern finally argues that Pacific Solar's expert provided an insufficient basis for his testimony thereby rendering Pacific Solar's claimed damages too speculative to support a recovery. (*Id.* at 10–12.)

I. **Whether the damages sought by Pacific Solar represent damages precluded by the parties' contracts**

Northwestern argues that the damages sought by Pacific Solar referred to as the developer's fee constitute lost profits or consequential damages whose recovery the parties' contracts expressly prohibit. (*Id.* at 7–11.) Northwestern cites to trial testimony by Pacific Solar's expert that the developer's fee represents a form of "profit" in the solar industry. Northwestern argues that this admission alone establishes that Pacific Solar's damages are barred by the PPAs. The Court

3

disagrees. The damages sought by Pacific Solar represent the value of the PPAs themselves as an asset.

A comparison to a commercial building proves illustrative. Imagine that a party entered a contract to lease all the office space in a commercial building for a period of twenty-five years. If the contract prohibited recovery of lost profits, then the proposed lessor could not recover the lost rental profits upon the proposed lessee's breach. The commercial building itself, however, retains value. The commercial building's value increases when the seller has signed long-term leases because it reduces the buyer's need to find tenants.

The solar projects represent the commercial building. The PPAs represent the lease agreements. The lost profits provision prohibits Pacific Solar from recovering the profits that it would have made from the sale of power under the PPA agreement. This prohibition on profits from the sale of the power generated from the completed solar projects appears like the prohibition on recovery of rental profits in the commercial building example. The solar projects themselves nevertheless possess value. The value depends on which development steps Pacific Solar has taken that a subsequent buyer could avoid having to take. Pacific Solar's founder, William Schmitt, testified to these steps as a "de-risking" process. The value of the solar projects depends on how many steps in the de-risking process Pacific Solar had taken

at the time of breach. The signed PPAs increased the value of the solar projects, as did obtaining lease options for land.

The damages sought by Pacific Solar represent the market value of the solar projects at the time of the breach. Pacific Solar never sought the profits that the solar projects would have produced when completed. Pacific Solar never sought the value had the projects been constructed and then sold. Pacific Solar sought the value of the asset, their solar projects, at the time of Northwestern's breach. The Ninth Circuit expressly determined that Pacific stood entitled to such damages: "Pacific was entitled to damages equal to the value of the four proposed projects in June 2016, when Northwestern repudiated the contracts." (Doc. 492 at 6–9 (citing Doc. 469 at 10).)

Northwestern attempts to distinguish the Ninth Circuit's ruling. The Ninth Circuit expressly rejected Northwestern's argument that "in seeking recovery of developer's fees on the four projects, Pacific was only seeking lost profits." (Doc. 469 at 10.) Northwestern emphasizes the word "only." (Doc. 536 at 7.) Northwestern contends that the Ninth Circuit's use of the word "only" means that the developer's fee included something other than lost profits but does not preclude the possibility that the developer's fee, in part, represented lost profits. (*Id.*) Northwestern's argument ignores the Ninth Circuit's references to *Schonfeld v. Hilliard*, 218 F.3d 164 (2d Cir. 2000). (Doc. 469 at 3, 10.)

5

In discussing Pacific Solar's need to prove damages the Ninth Circuit cited *Schonfeld* for the concept that "the most accurate and immediate measure of damages [for the loss of an income-producing asset] is the market value of the asset at the time of breach." (Doc. 469 at 3–4 (citing *Schonfeld*, 218 F.3d at 176).) The Ninth Circuit again cited *Schonfeld* in rejecting Northwestern's argument that the developer's fee constituted lost profits such that the award should be reduced to nothing. (Doc. 469 at 10 (citing *Schonfeld*, 218 F.3d at 177).) *Schonfeld* expressly distinguishes between lost profits and the value of an income-producing asset: "the most accurate and immediate measure of damages is the market value of the asset at the time of breach - not the lost profits that the asset could have produced in the future." *Schonfeld*, 218 F.3d at 176.

Northwestern made the same argument to the Ninth Circuit that it makes now. Northwestern contended that "the *only* evidence presented at trial was regarding the developer's fee; which means the *only* evidence presented at trial supported an award of damages that was unambiguously and expressly prohibited by the contracts." Appellant's Opening Brief, *Pacific Northwest Solar LLC v. Northwestern Corporation*, 22-35186, Doc. 19 at 40 (9th Cir. June 24, 2022). The Ninth Circuit rejected that argument, as does this Court.

The Ninth Circuit affirmed the District Court's rejection of a jury instruction based on the Ninth Circuit's conclusion that Pacific Solar was entitled to damages

equal to the value of the projects at the time of repudiation, not to the value of such projects had they been completed in the future. (Doc. 469 at 6–7.) The Ninth Circuit recognized the "lost profits" limitation in the contracts in the same opinion. (*Id.* at 10.) If the value of the projects at the time of repudiation constitutes lost profits and consequential damages barred by the contracts, as argued by Northwestern, it would have made little sense for the Ninth Circuit to remand for a trial on damages that it thought Pacific Solar could not recover as a matter of law. The Court disagrees with Northwestern's interpretation of the Ninth Circuit's opinion.

Finally, Northwestern asks the Court to reconsider its prior ruling that Northwestern has waived its argument pertaining to the consequential damages provision. Northwestern argues that the jury instruction given in the first trial only pertained to an award of lost profits, leaving Northwestern with no basis to raise the consequential damages limitation on appeal. Northwestern ignores, however, that it also argued on appeal that the District Court erred in denying its motion for a directed verdict and its motion for a new trial. Appellant's Opening Brief, *Pacific Northwest Solar LLC v. Northwestern Corporation*, 22-35186, Doc. 19 at 41–42, 48 (9th Cir. June 24, 2022). Northwestern argued that the damages awarded by the jury proved unrecoverable. *Id.* at 38. Northwestern could have asserted its consequential damages argument in support of any of those issues. It failed to do so.

7

The Court again rejects Northwestern's contention that the Ninth Circuit rejected any waiver argument. The Ninth Circuit addressed "lost profits." The Ninth Circuit's opinion never mentions consequential damages. Importantly, had the Ninth Circuit determined that Northwestern's defense relating to "other consequential damages" remained intact, the decision to remand would have made little sense given the Ninth Circuit's reliance on *Schonfeld*.

Northwestern argues that it previously has asserted its consequential damages argument. (Doc. 536 at 8.) Northwestern points to the following identified issue of law set forth in its preliminary pretrial statement on March 17, 2017: "[w]hether PNWS can recover indirect and/or consequential damages, such as lost profits, for an anticipatory breach of contract." (Doc. 31 at 19.) Northwestern contends that it reasserted this argument in its amended preliminary pretrial statement on March 30, 2021. (Doc. 536 at 8.) No party filed a document on that date, however, and the document number to which Northwestern cites for its amended preliminary statement was filed on March 30, 2017. (Doc. 38.) The amended final pretrial order filed before the first trial failed to mention consequential damages. (Doc. 403.) The only defense set forth in the pretrial order related to Montana Pattern Jury Instruction 25.43, which pertains to speculative damages and the requirement that damages must have a reasonable basis to be recoverable. (*Id.* at 5.)

Northwestern further filed a very similar motion for judgment as a matter of law at the first trial and failed to raise any issue regarding consequential damages. (Doc. 429.) Northwestern's only argument regarding damages barred by the contracts surrounded lost profits. (Doc. 429 at 4–5.) Northwestern failed to give the District Court in the first instance, or the Ninth Circuit on appeal, an opportunity to address the merits of Northwestern's "other consequential damages" defense. Northwestern failed to raise this defense in the prior trial or on appeal. To allow Northwestern to raise the "consequential damages" argument after their "lost profits" argument failed at the Ninth Circuit would be improper. "[W]e need not and do not consider a new contention that could have been but was not raised on the prior appeal. Permitting a case to proceed to a decision on the merits before asserting a previously available defense undermines the integrity of the judicial system, wastes judicial resources, and imposes substantial costs upon the litigants." *Lowery v. Channel Comm'n Inc.*, 539 F.3d 1150, 1155 (9th Cir. 2008) (internal citations omitted).

The damages sought by Pacific Solar at trial—the value of the solar projects on the date of breach—do not represent damages barred by the contracts. The Court denies Northwestern's motion for judgment as a matter of law on this issue.

**II.** **Whether Pacific Solar's damages represent the value of the solar projects upon completion.**

The Ninth Circuit determined that "Pacific [Solar] was not entitled to damages equal to the projects' potential value if completed. Rather, Pacific [Solar] was entitled to damages equal to the value of the four proposed projects in June 2016, when Northwestern repudiated the contracts." (Doc. 469 at 6.) Northwestern argues that because the valuation of the solar projects presented by Pacific Solar at trial assumed that the projects would have been completed, the damages represent the value of "completed projects." This argument fails.

Pacific Solar presented testimony at trial through William Schmitt that the value of completed projects would have been much higher, approximately $5 million higher, had the projects been constructed and sold at the completion stage. Schmitt's testimony clearly opined on the value of the projects on the date of breach. Pacific Solar's witnesses testified that it is common within the solar industry to sell non-completed projects like those at issue in the case. Other testimony in the record showed that many of these types of solar projects fail before construction. A willing buyer factors that risk level into what they would be willing to pay. The market value for these types of projects increases as the "de-risk" process progresses.

The Court again turns to an example. A restaurant's value may be based, in part, on the assumption that a condominium building will soon be constructed nearby. A risk exists that the condominium construction fails. The risk level may impact the value of the restaurant. For example, a buyer would be willing to pay

more for the restaurant if the condominiums are 50% constructed than if the condominium owner is still awaiting permitting. A buyer would be willing to pay even more if the condominiums are fully constructed and filled with tenants who will frequent the restaurant.

Similarly, here, the solar projects carried a value based on the level of "de-risking" that had occurred. The risk of non-completion of the projects always existed. The value of the projects increased, however, as Pacific Solar reduced the risk of noncompletion by executing PPAs, obtaining lease options, and engaging in other steps of "de-risking." Pacific Solar sought the value of the four projects on the date of the breach when the risk of project failure was high. Pacific Solar did not seek the value of the completed project. Schmitt testified that the value of the completed projects would be nearly $5 million more than the estimates provided by the valuation model. Northwestern confuses the amount a project is worth if completed with the amount a project is worth if it still carries some risk of non-completion. The Court denies Northwestern's motion for judgment as a matter of law on this ground.

### III. Whether Pacific Solar's expert carried the burden for establishing damages.

Northwestern argues that Pacific Solar's expert, Brian Lynch, provided testimony that proved too speculative to support a recovery of damages. Northwestern wholly ignores the fact that even if Lynch's testimony proved too

speculative, other evidence existed upon which a jury could base their award of damages. First, the founder of Pacific Solar, who has worked for many years in the industry and has developed his own model for valuing projects, testified that the projects had a value of $8 million on the date of the breach. Schmitt further testified that he received an offer for over $2 million for the projects on the same day that Northwestern breached the contracts. "[A] recent sale price for the subject asset, negotiated by parties at arm's length, is the 'best evidence' of its market value." *Schonfeld*, 218 F.3d at 178; *see also In re Estate of Power*, 476 P.2d 506, 509 (Mont. 1970) ("what better evidence of market value exists than the price commanded . . . in open market transactions?").

Pacific Solar also offered evidence related to other projects that it has sold. Schmitt agreed on cross-examination that the sale value of one project did not necessarily mean that another project would sell for that same amount. Schmitt also emphasized, however, the need to look at the inputs. Schmitt testified to the AC/DC outputs of those other projects, their location, the level of "de-risking" that had occurred, and many other variables that the jury could use to reasonably estimate the value of the projects on the date of breach. "One of the most reliable tests as to evidence on the question of fair market value of course is that of comparable sales." *State by State Highway Comm'n v. Tubbs*, 411 P.2d 739, 743 (Mont. 1966).

Considering the testimony as to the sale price of other projects, the evidence of the approximately $2.5 million offer on the date of the breach, and the valuation model to which Schmitt testified, sufficient evidence exists for a jury to have a reasonable basis for awarding the $3.2 million that they awarded. Furthermore, Northwestern made this same argument in the last trial, which the District Court rejected. Lynch testified to his substantial experience in the industry, his experience valuing projects and reviewing models, and his opinion that the values presented by Schmitt's valuation model proved reasonable considering the characteristics of the projects. The Court finds that Lynch's testimony passes the *Daubert* standard. Even if Lynch's testimony failed to meet this standard, substantial other evidence exists which afforded the jury a reasonable basis for awarding the $3.2 million. The Court denies Northwestern's motion on this ground.

## CONCLUSION

The Court denies Northwestern's motion for judgment as a matter of law. The damages sought by Pacific Solar do not represent the type of lost profits barred by the PPAs. The damages sought by Pacific Solar do not represent the value of the

projects had the projects been completed. Finally, Pacific Solar presented sufficient evidence to afford the jury a reasonable basis for its damages award.

## ORDER

Accordingly, **IT IS ORDERED:**

1.) Northwestern's Motion for Judgment as a Matter of Law (Doc. 535) is **DENIED**.

DATED this 11th day of March, 2024.

_Brian Morris_
Brian Morris, Chief District Judge
United States District Court